Matter of Almanzar v City of New York City Civ. Serv. Commn. (2018 NY Slip Op 08062)





Matter of Almanzar v City of New York City Civ. Serv. Commn.


2018 NY Slip Op 08062


Decided on November 27, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 27, 2018

Renwick, J.P., Gische, Mazzarelli, Kern, Moulton, JJ.


7160 100355/16

[*1]In re Geronimo Almanzar, et al., Petitioners-Appellants,
v
City of New York City Civil Service Commission, et al., Respondents-Respondents.


Koehler & Isaacs LLP, New York (Liam S. Castro of counsel), for appellants.
Zachary W. Carter, Corporation Counsel, New York (Susan Paulson of counsel), for respondents.



Judgment (denominated decision and order), Supreme Court, New York County (James E. d'Auguste, J.), entered June 29, 2017, to the extent appealed from, denying the petition to annul a determination of respondent City of New York City Civil Service Commission (CSC), dated November 10, 2015, which terminated petitioners' employment with the New York City Department of Correction (DOC), and dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.
The underlying disciplinary proceeding arose out of a physical confrontation between petitioners, who are correction officers, and Robert Hinton, an inmate, inside Hinton's Rikers Island cell. It was not disputed at the hearing that the officers used significant force against Hinton, causing him to sustain injuries including nasal and spinal fractures. The question was whether the force was excessive and, more precisely, whether Hinton was handcuffed at the time, such that petitioners' allegations that he attacked them and placed one of them in a chokehold, lacked credibility.
DOC called 13 witnesses to testify, and all six of the officers involved in the incident testified on their own behalf. Furthermore, the ALJ personally visited the facility and viewed surveillance video (although there was no video taken inside the cell). Hinton was one of the witnesses presented by DOC. However, petitioners moved for a mistrial, or, alternatively, to strike Hinton's testimony. This was based on the fact that DOC's counsel in the proceeding was replaced mid-hearing because he had provided confidential information to an attorney who was representing Hinton in an action for damages against the City arising from the same incident [FN1]. The ALJ refused to declare a mistrial, but did strike Hinton's testimony "to rid this proceeding of any taint." Nevertheless, the ALJ considered Hinton's written statement, which was given hours after the incident in question, and which the ALJ characterized as "generally consistent" with his stricken testimony.
The ALJ also considered statements by seven other inmates who claimed to have been near the cell at the time of the altercation and had an opportunity to see or hear either the incident itself or the aftermath. Only one of the inmates stated that he was able to see directly into Hinton's cell at the time of the confrontation (which the ALJ confirmed after conducting a site visit), and he largely supported Hinton's version of events. None gave a version of events directly supportive of petitioners. Finally, the record reviewed by the ALJ also included a letter from an associate medical examiner in the New York City Office of the Chief Medical Examiner. The examiner stated that he was generally "unable to shed much light on the events" and that he could not "make an assessment . . . whether or not [Hinton] was bound at the time of injury with [*2]a reasonable degree of medical certainty."
The ALJ found that the officers were not credible, in part because the injuries they testified about were inconsistent with those recorded in medical reports created after the incident. In contrast, the ALJ found that several of the inmates' statements were credible, while disregarding the other inmates' statements as, while not lacking credibility, being nonprobative. With respect to the inmate who asserted that he could see into Hinton's cell and saw him being beaten with handcuffs on, the ALJ "found [the] statement credible and accorded it significant weight."
Petitioners appealed to CSC. In a 2-1 decision, insofar as relevant on appeal, CSC affirmed the ALJ's findings and recommendations. The majority declined to consider Hinton's written statement or testimony, in light of the prosecutorial misconduct noted above; however, the majority found the remaining evidence, including the written inmate statements, sufficient to support the ALJ's findings. The dissenting member of CSC found that, inter alia, petitioners were deprived of due process insofar as they were unable to confront their accusers.
Petitioners brought this article 78 proceeding seeking, among other things, to annul the determination, reinstate their employment with full back pay and benefits, and remand the disciplinary matter for a new hearing. Respondents cross-moved to dismiss the petitions. As is relevant to this appeal, the court granted respondents' cross motion, denied the petitions, and dismissed the proceeding. The court rejected petitioners' argument that by relying on the inmates' unchallenged statements, and declining to assign any error to the ALJ, CSC deprived them of their due process rights to fairly confront their accusers, finding that there was sufficient additional evidence in the record to support CSC's determination.
Civil Service Law § 76(1) permits a person whose civil service employment has been terminated to "appeal from such determination either by an application to the state or municipal commission having jurisdiction, or by an application to the court in accordance with [article 78]." If the former option is chosen, "[t]he decision of such civil service commission shall be final and conclusive, and not subject to further review in any court" (Civil Service Law § 76[3]). The Court of Appeals has clarified that, despite the plain language in the statute, judicial review is not completely foreclosed (Matter of New York City Dept. of Envtl. Protection v New York City Civ. Serv. Commn., 78 NY2d 318, 323 [1991]). Rather, the article 78 court, instead of being guided by the substantial evidence or arbitrary and capricious standards of review, is limited to reviewing whether "the agency has acted illegally, unconstitutionally, or in excess of its jurisdiction" (Matter of Griffin v New York City Dept. of Correction, 179 AD2d 585 [1st Dept 1992]).
Petitioners argue that CSC acted unconstitutionally because it relied on the statements of the inmates, who never testified, thus depriving petitioners of any chance to cross-examine them. However, this point is unpreserved. Petitioners fail to point to anything in the record showing that they ever sought to cross-examine or call the inmates and were denied that opportunity. More importantly, they never protested that their constitutional rights were being violated. This Court has "no discretionary authority" to "reach[] an unpreserved issue in the interest of justice" in an article 78 proceeding challenging an administrative determination (Matter of Khan v New York State Dept. of Health, 96 NY2d 879, 880 [2001] [internal quotation marks omitted]), including issues touching on due process (Green v New York City Police Dept., 34 AD3d 262, 263 [1st Dept 2006]) and evidentiary challenges (Matter of Gibbs v New York State Dept. of Motor Vehs., 156 AD3d 505 [1st Dept 2017]).
Accordingly, the petition was properly dismissed.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: NOVEMBER 27, 2018
CLERK



Footnotes

Footnote 1: The DOC attorney's employment was later terminated based on his misconduct in this and other matters.